Opinion by
White. P. J.
§ 454. License; definition of; rules as to; case stated. Appellants brought this suit in the county court against appellees to recover $300, the value of a certain fence which appellees took and removed from land belonging to appellants, and for $700 damages. Appellees in their defense claimed that said fence belonged to appellee Tucker, and that he had a legal right to remove the same from the land. Verdict and judgment for appellees. It is only necessary to determine to whom the fence belonged, and to notice only the principal incidental questions germane to that question. On the 12th day of February, 1881, appellee Tucker and his wife conveyed by their warranty deed to John A. Carro, husband of appellant Mary C. Carro, forty acres of land. Contemporaneously with this deed the following agreement was executed by John A. Carro, viz.:
“The State of Texas, Van Zandt County.
“ This agreement made and entered into between John A. Carro of the first part, and G-. L. Tucker of the sec *400 ond part. The party of the first part covenants and agrees to permit and let G. L. Tucker, of the second part, carry and move off, for his own use and benefit, all the rails, planks and posts and barbed wire that are now on a certain tract of land that G. L. Tucker and his wife have deeded to John A. Carro, containing forty acres of land; said deed bears even date with this agreement.*5
The fence was not removed by Tucker, but remained upon the land from the date of the execution of said deed and agreement in 1881 until January 4, 1884, when he took and carried it away. John A. Carro died June 3, 1882, and Mary C. Carro, his widow, paid Tucker $10 for the use of the fence for 1882, and executed to him the following instrument with regard to it for 1883, viz.:
“Cedar Grove, Texas, February 24, 1883.
‘ ‘ Due G. L. Tucker after the crop is gathered, twelve and i dollars for the use of the fence during the year 1883.”
Appellants contend that the agreement executed by John A. Carro was but a license, and was revocable, and was revoked by the death of said Carro. In general a license, with regard to contracts, isa permission. “A right given by some competent authority to do an act which, without such authority, would be illegal. An authority to do a particular act or series of acts on another’s land without possessing any estate therein.” [Bouv. Law Die. “License.”] The rule is general that a mere license may be revoked at the pleasure of the grantor. [11 Mass. 433; 15 Wend. 380; 1 Wash, on R. Prop. 398.] Ordinarily, a mere license is determined and revoked by the death of either party thereto. [Johnson v. Carter, 16 Mass. 443; Prince v. Case, 10 Conn. 375; Miller v. R. R. Co. 6 Hill, 61.] On the other hand, where a license is- coupled with an interest, it is generally irrevocable. [Snowden v. Wilas, 19 Ind. 10; Miller v. State, 39 Ind. 267; Silsby v. Trotter, 29 N. J. Eq. 228.] Or, where necessary to the enjoyment or possession of a title or right arising under an act or contract of the-person *401 who creates it, it is irrevocable; as, for instance, where the license is directly connected with the title to personal property which the licensee acquires from the licensor at the time of the license given. , [Watson v. King, 4 Camp. 272; Gaussen v. Morton, 10 B. & C. 731; Beatie v. Butler, 21 Mo. 313; Muskitt v. Hill, 5 Bing. (N. C.) 694; Congreve v. Evetts, 10 Exch. 298; 7 Wait’s Act. & Def. 208.]
§ 455. Fences, when real and when personal property; reservation; meaning and operation of. Fences are in law deemed part of the freehold. “Fences are not only indispensable to the enjoyment of real estate, but they are in their nature real estate, to the same extent that houses and other structures on land are so.” [Murray v. Van Derlyn, 24 Wis. 67.] “ A fence, therefore, belonging to the owner of the' land, will pass by his deed of the land, without being expressed or designated as part of the thing granted.” [3 Wait’s Act. & Def. 329.] “The general rule is, that things personal in their nature, which are fitted and prepared to be used with real estate, and are essential to its beneficial enjoyment, become part of the soil, and pass with it under a deed of conveyance, provided they are once annexed to the land, and continue to be so used. But par-ties may, by contract, agree to sever such things from the realty, and treat them as personal property.” [Ante, § 222.] And in deeding real estate, the grantor may expressly reserve his right to remove such property, and to retain title and possession-of the same. “A reservation is properly the retaining of some right or profit to arise from the subject of the demise, which had previously no separate existence. [4 Wait’s Act. & Def. 227.]
§ 456. Agreement construed to he a reservation; contemporaneous turitings construed as one. The agreement in regard to the fence in question is preservation, rather-than a license. But even if construed as a license it was-irrevocable, because it was directly connected with the-title to the fence, which the parties, at the time of the- *402 agreement, evidently intended should remain in Tucker. And if this were not so, Mrs. Carro, after the death of her husband, recognized and acted upon the agreement, and by her acts so far ratified the same as that she would, in equity, be estopped from denying its validity. The agreement was executed contemporaneously with the deed, and must be considered as a part of the deed. “ Two or more instruments executed contemporaneously between the same parties, with reference to the same subject-matter, are deemed one instrument and one contract.” [W. & W. Con. Rep. § 365.] Construing these instruments together, the agreement is a reservation by deed, and the title to the fence never passed, and never was intended to pass, to Carro, and said agreement cannot,' in this aspect, be considered a license, inasmuch as Carro never acquired or held title in the fence, and therefore could not grant a license with reference to it. But whether the agreement be treated as a license or as a reservation, the fence belonged to Tucker and he had the right to remove it from-the land, and appellants have no cause of action against appellees.
November 26, 1884.
Affirmed.