MARY MELISSA BLACK, Appellant, v. T. B. NICHOLS et al., Appellees.

No. 40356.

JANUARY 19, 1932.

J. G. Kammerer, for appellant.

Nichols, Tipton & Tipton, for appellees.

DE GRAFF, J.—The plaintiff filed her petition in equity, alleging substantially the following facts: That she acquired title to the land in question by virtue of a contract, partly oral and partly in writing, from one Townsend Nichols, her uncle; that the written part of the contract had been lost and she was unable to produce it, but that its terms and the terms of the oral contract were in substance that she was to take possession of said real estate, farm the same, keep the same improved, pay the taxes thereon, and pay an annuity unto her uncle of $1.00 per acre per year, and at his death, the property was to become her sole and absolute property in fee simple; that she entered upon the possession of said property in 1900, and performed all the conditions required of her to be performed, and fulfilled the covenants of said contract; and that now, since the said Townsend Nichols, her uncle, has died, she is the absolute owner thereof.

In his cross-petition, Benjamin F. Nichols recites that his great-uncle, Townsend Nichols, made and executed a will in 1914, which was duly probated, and did likewise, on May 19, 1926, execute an instrument, testamentary in character, which was also probated with the 1914 document. B. F. Nichols claims his title to the land through the instrument dated May 19, 1926.

The plaintiff, to prove the allegations of her petition, first called one of the defendants, T. B. Nichols, to the witness stand. From his testimony it appears that he had a conversation with Townsend Nichols to the effect that deeds from him, covering the various parcels of land, to the persons who were on them, including the plaintiff, had been deposited·in a bank at West Liberty, Iowa; and later on, Townsend Nichols told the witness that he had destroyed those deeds. This witness also produced, on direct examination on behalf of plaintiff, an instrument known in the record as Exhibit A, which is as follows:

"Nichols, Iowa, May 19, 1899.
"Mr. T. B. Nichols,
"This is to show that Townsend Nichols has instructed me to place in your care and control the following land about 283

acres. To-wit: The NW¼ of Section 14 except the H. J. Brown thirty-seven (37) acres and the NE¼ of Section 15, Twp. 77 Range 4.

"This land subject to the present lease of H. J. Brown which expires March 1st, 1900.

"Townsend Nichols is to have all rents for the year of 1899. You are to have possession as soon as the present crop is harvested and delivered to Townsend Nichols.

"You are to pay all taxes after Jan. 1st, 1900, and to pay to Townsend Nichols or his agent Four Hundred Dollars ($400) per annum. First payment due January 15th, 1901.

"John Nicola."

This witness further testifies that Exhibit A was handed to him by John Nicola, now deceased, who was the then agent of Townsend Nichols, who told the witness that the paper would put the witness in possession of the land described in the instrument, as a renter; that the land occupied by the plaintiff was commonly referred to by Townsend Nichols as the "Black land."

Margaret Nicola, daughter of John Nicola, testified that she does not claim to know the terms of the written or oral contract, and her father is now dead. She further testified that Townsend Nichols would ride out with the different persons in possession to look at the different lands and speak of it to these persons, respectively, as "your land," when he was with them.

Benjamin F. Swickard testified that the arrangement made with him by Townsend Nichols was the same as the arrangement made with the plaintiff and others, including T. B. Nichols.

The plaintiff then took the stand and testified as follows:

"I took possession of this land in 1899, and he requested that I improve it and pay the taxes and annuity on 485 acres,—that is, $485.00. I have been in possession of this land ever since, and am still in possession of it, and my possession has never been questioned by Townsend Nichols or John Nicola, his agent. When Townsend Nichols was visiting here, I took him down on the land, and he was well pleased with the improvements. He said: 'You are doing well with the land.' I pointed out the land and said: 'This is the land you gave me.' I received a slip of paper from John Nicola, the agent of Townsend Nichols, that I was to have this land. After Mr. Black died, I

couldn't find the paper. I went into possession of the land under that arrangement and have paid the taxes and annuities.''

The plaintiff introduced a letter written by Townsend Nichols to John Nicola on May 23, 1903, in which Townsend Nichols says, among other things:

''There is a bridge, or was at one time, about the center of Robert Black's north quarter of the land that I deeded to him.''

The plaintiff likewise produced a letter written by Townsend Nichols on December 20, 1900, to John Nicola; in which the following appears:

''I suppose it is not very agreeable job for you and I would like for you to see those parties that I have deeded lands to and where they have not already paid their annuity or rent, to take their notes.'' Also: ''Now I am suggesting this on the supposition that they were all satisfied with the assignment that I had made.'' Also: ''Of course, I have, or did have, letters from all but Mert Brockway and Bub Swickard. They were all well pleased with the arrangement but did not mention the annuity coming to me and I did not know if you had mentioned it to them, for fear of hurting their feelings.''

Plaintiff also introduced a letter written by Townsend Nichols to John Nicola on May 20, 1894, in which the following is found:

''I want to embrace in the codicil of my will a description of the land that each one is to have in the final round-up in the far future. Then it will leave the matter so that you will each know that you are not digging your ditches and improving the other man's land.''

Plaintiff also introduced in evidence a letter dated January 29, 1895, from Townsend Nichols to John Nicola, in which the following is found:

''Now, if we make this arrangement, it is not the intention for you to give up the control of the same, but let them have possession to the rents of same and to go ahead and improve the same with your permission and consent as to the kind of improvement and to keep an account of the actual expense of same, they to pay all taxes on same.''

. Also :

"I do not think there is any use of our going ahead and piling up a lot of money to quarrel over when I am done with it, and if you can suggest any better plan, I am ready to consider it. I think that if we can make this plan work, they will get used to handling their own and will know exactly what they are to get and will not be disappointed in the end, expecting a great deal more."

The plaintiff also offered in evidence a purported copy of the will of Townsend Nichols, made in 1892, and a codicil to the same, made in 1894, in which he bequeathed unto the plaintiff the land which she now claims.

The plaintiff then offered in evidence an affidavit made by John Nicola in December of 1921, in which affidavit Nicola states, among other things, that Townsend Nichols made and executed warranty deeds to the land described in the codicil of the will of 1892, to the persons as therein set forth and related, and delivered the deeds to him to be deposited in the Iowa State Bank at West Liberty, Iowa, the purpose and intention of making the deeds being to eliminate the twenty-five year reservation in the codicil, so that, immediately upon his death, deeds could be delivered to the parties thereto, so that they would have full title at once, instead of waiting for twenty-five years, as the codicil provided. He states in his affidavit that he placed the deeds as instructed, and delivered the land to the persons as instructed, and informed each of the parties of the terms on which they were to have the land.

On behalf of the defendant, the plaintiff's witness T. B. Nichols, on cross-examination, produced a letter written to him on July 23, 1906, by Townsend Nichols, in which, among other things, the following appears.

"You must get it out of your head that they own these lands, but as they are assessed to me you are authorized to pay the same and not ask the privilege of anyone."

The defendant also produced in evidence an instrument identified in the record as Exhibit 3. It purports to bear the signature of Mary M. Black, Robert Black, her husband, and Benjamin H. Black, her son. While there is some evidence in

the record that the signatures are not genuine, we are satisfied that they are. This instrument reads as follows:

"Agreement.

"Whereas, the undersigned has been, for several years last past, and now is in the possession of the real estate hereinafter described, as a tenant at will, from year to year, of Townsend Nichols, who is the owner of said real estate, and

"Whereas, the undersigned as the consideration for such possession has paid to said Townsend Nichols a certain sum of money for each year of such possession and has in addition thereto paid the general taxes and the special assessments for drainage heretofore levied upon said real estate, and

"Whereas, said real estate is located within the limits of Drainage District No. 2 of Muscatine County, Iowa, and under proceedings now pending is about to be specially assessed for the extension, improvements and repairs of the drainage project in said drainage district, now

"This instrument is evidence of the agreement of the undersigned that he will pay as rentals for said real estate, in addition to the same sum of money and the general taxes as heretofore, all of the special assessments now or hereafter levied upon said real estate as and when the several installments thereof shall become due, so long as the undersigned remains in possession of said real estate as such tenant at will.

"It is the express agreement and understanding that so long as said tenancy shall continue, the said Townsend Nichols shall receive the amount of cash rental heretofore paid to him free and clear of all expenses and that all taxes and special liens imposed by law upon said real estate shall be paid by the undersigned.

"This instrument is also intended to advise said Townsend Nichols which of the several parties holding possession of his real estate as tenants at will, intend to assume the payments herein provided for and which of them prefer to deliver up the possession of the real estate so held, unto the said Townsend Nichols.

"The real estate in this agreement referred to is the following: East Half of Section 20 and all of Section 21 lying

west of the Railroad, in Township 77 North, Range 4 West of the 5th P. M. ·    :

"Mary M. Black.

"Dated at Nichols, Iowa, May 17, 1921.

"In the presence of Robert Black, Benjamin H. Black."

█ Against the offer of a great deal of the testimony to which we have referred, and in fact all of it, defendant's counsel offered the usual objections, including those of incompetency on account of what is usually known as the "dead man's statute" (Sec. 11257, Code, 1927).

The testimony of the plaintiff with respect to a contract entered into between her and the deceased Townsend Nichols, this being an action by her and against a special administrator and also a devisee, is clearly incompetent. It is the only evidence that such a contract as claimed by her was ever made. Hence, there being no competent evidence of the fact in main issue, there is nothing for corroboration; and, regardless of the competency, relevancy, or materiality of other evidence, the plaintiff's ·case must fail.

█ In passing, however, we may state that the will of Townsend Nichols, executed in 1914, and the agreement signed by Mary M. Black and witnessed by her husband and Benjamin H. Black, her son, under date of May 17, 1921, seem to be in direct denial of the claim made by the plaintiff in this suit. We believe, therefore, that the court was right in dismissing the plaintiff's petition. She has failed to meet that requirement so often expressed by this court and other courts of last resort that, in cases of this kind, the evidence, to sustain the plaintiff's claim, must be clear, cogent, and convincing.

The only proposition argued by the appellant with respect to her rights in the land in controversy relates to her claimed title by virtue of the contract, partly written and partly oral. In the motion to set aside the decree, complaint is made of the action of the trial court in quieting the title in B. F. Nichols. This complaint is not argued by the appellant, and hence is not considered by the court. The appellant makes no claim to any right in and to the property by virtue of the provisions of the will of 1914 or those of the instrument of 1926, as was made in Nichols v. Swickard, 211 Iowa 957. We do not feel called upon to pass any opinion as to what the plaintiff's rights are, except

that we limit this opinion to the statement that the plaintiff has not established her claim of fee-simple title, and that, as between the plaintiff and the defendants on the issues joined, the decree of the trial court is,—Affirmed.

WAGNER, C. J., and STEVENS, FAVILLE, and ALBERT, JJ., concur.